IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GREGORY J. CRYAN; JERRY KEITH BOWMAN, JR.; WILLIAM M. HAYNES; MATTHEW C. McCOUN; PHILLIP R. LEEK; and STEVEN FISCHER,<br>    Plaintiffs,<br>              v.<br>CBIZ INSURANCE SERVICES, INC. and MIKE GILL,<br>    Defendants. | Civil Action No.<br>1:24-cv-02708-SDG |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs Gregory Cryan; Jerry Keith Bowman, Jr.; and William M. Haynes' (the Moving Plaintiffs) motion for a preliminary injunction [ECF 15] and Defendants' motion to transfer venue [ECF 16]. Because the Court concludes that this action should be transferred to the United States District Court for the Northern District of Ohio, it declines to rule on the Moving Plaintiffs' motion for preliminary injunctive relief.

1

I. **Factual Background**

The Verified Complaint alleges the following.[1] Plaintiffs were all employed by Defendant CBIZ Insurance Services, Inc. until May and June 2024.[2] Defendant Mike Gill is a President at CBIZ and was involved in the events that form the basis of Plaintiffs' Complaint.[3]

In 2012, Cryan sold his then-existing brokerage business to CBIZ pursuant to an Asset Purchase Agreement (the APA) effective January 1, 2012.[4] The APA is governed by Ohio law, and the parties to the agreement submitted to the exclusive jurisdiction of Ohio courts for any "dispute[s] arising out of" the APA.[5] The APA also contains various restrictive covenants, including limitations on the use of confidential information[6] and a noncompetition and nonsolicitation restriction.[7] As the same time he entered the APA, Cryan entered into an Employment

---

[1] *Cf. Usme v. CMI Leisure Mgmt., Inc.*, --- F.4th ---, Case No. 22-11324, 2024 WL 3217570, at *1 (11th Cir. June 28, 2024) ("In reviewing an order dismissing a case for *forum non conveniens*, we accept as true the factual allegations in the complaint to the extent they are uncontroverted by affidavits or other evidence.").

[2] ECF 1-1, ¶¶ 2–7.

[3] *Id.* ¶ 10.

[4] *Id.* ¶ 16; ECF 15-2, at 5–60.

[5] ECF 15-2, at 55, § 8.8.

[6] *Id.* at 40, § 5.2(a).

[7] *Id.* § 5.2(c).

2

Agreement in which he agreed that breaches of the covenants in the APA would be litigated in Ohio.[8]

The other Plaintiffs, Bowman; Haynes; Matthew McCoun; Phillip Leek; and Steven Fischer all worked at CBIZ's office in Alpharetta, Georgia,[9] and each was subject to a Confidentiality and Non-Solicitation Agreement (Employment Agreement) with restrictive covenants governing the solicitation of CBIZ's clients and employees (together with Cryan's covenants, the Employment Covenants).[10] The Employment Agreements are governed by Ohio law and contain forum-selection provisions that require litigation "arising out of" the agreements to be brought in Ohio.[11]

Plaintiffs allege that Gill recently began a smear campaign against the Moving Plaintiffs that culminated in the termination of Bowman's and Haynes's employment, and Cryan's suspension without pay, on May 29, 2024. Gill and CBIZ then began to publicly disparage and make defamatory statements about the Moving Plaintiffs to damage their reputations. This led to other insurance brokers

---

[8] ECF 16-1, ¶¶ 9(a). *See generally id.* at 61–74.

[9] *Id.* ¶¶ 3–7.

[10] *See generally id.*, Count IV; ECF 16-3 (Bowman Agreement), ¶¶ 5–6; ECF 16-4 (Haynes Agreement), ¶¶ 5–6; ECF 16-5 (McCoun Agreement), ¶¶ 5–6; ECF 16-6 (Leek Agreement), ¶¶ 5–6; ECF 16-7 (Fischer Agreement), ¶¶ 5–6.

[11] ECF 1-1, ¶ 56; ECF 16-1, ¶ 14; ECF 16-3, ¶ 12; ECF 16-4, ¶ 12; ECF 16-5, ¶ 12; ECF 16-6, ¶ 12; ECF 16-7, ¶ 12.

attempting to poach Cryan and Bowman's clients. As a result of the alleged conduct against the Moving Plaintiffs, McCoun, Leek, and Fischer resigned from CBIZ on June 10.[12]

## II. Procedural History

The procedural history of the parties' dispute is somewhat complicated, with dueling actions in two different courts in different states. First, on June 12, 2024, Plaintiffs filed suit in the Superior Court of Fulton County, Georgia, asserting claims under Georgia's deceptive trade practices act, for libel and slander, and for a declaratory judgment under Georgia law.[13] The declaratory judgment cause of action contends that the Employment Covenants to which Plaintiffs are subject violate Georgia law.[14] Defendants subsequently removed to this Court based on diversity jurisdiction.[15]

Separately, on June 18, 2024, CBIZ and two of its related entities filed suit against Plaintiffs in the Northern District of Ohio (the Ohio Court), seeking

---

[12]  *See generally* ECF 1-1, ¶¶ 21–36, 57.

[13]  ECF 1-1.

[14]  *Id.* ¶ 59.

[15]  ECF 1.

temporary and preliminary injunctive relief because of Plaintiffs' alleged breaches of their Employment Covenants.[16]

In this Court, on June 25, 2024, the Moving Plaintiffs filed a motion for a preliminary injunction to prevent Defendants from (1) making defamatory statements and (2) enforcing the Employment Covenants.[17] The next day, Defendants moved to transfer this case to the Ohio Court, citing the forum-selection clauses in the Employment Agreements and the APA.[18]

On June 28 and July 2, 2024, the Ohio Court held an evidentiary hearing on the CBIZ injunction motion.[19] The court granted the motion in part, concluding that CBIZ had shown a likelihood of success on the merits of its claims that Plaintiffs had breached their Employment Covenants.[20] The Ohio Court considered Plaintiffs' argument that Georgia law controls the interpretation of the Employment Agreements but concluded that the contracts did not appear to be

---

[16] *CBIZ, Inc. v. Cryan*, Case No. 1:24-cv-01027-JPC (the Ohio Case), Docs. 1, 2. Although not relevant for immediate purposes, the CBIZ entities also sued Plaintiffs' new employer, EPIC Insurance Brokers and Consultants.

For clarity, this Order refers to Cryan, Bowman, Haynes, McCoun, Leek, and Fischer as "Plaintiffs" regardless of their litigation position in a particular case.

[17] ECF 15.

[18] ECF 16.

[19] Ohio Case, Docs. 20, 23.

[20] ECF 27-1.

5

"contrary to a fundamental policy of Georgia."[21] The injunctive relief the Moving Plaintiffs seek in this Court therefore runs directly into the issues the Ohio Court has already preliminarily considered and ruled on.

Accordingly, on July 16, the Court stayed all proceedings in this case pending its ruling on Defendants' motion to transfer.[22]

### III. The Parties' Arguments

In their motion to transfer, Defendants assert that Plaintiffs' Employment Agreements all have forum-selection clauses requiring them to bring their claims in Ohio. As a result, Defendants contend that transfer to the Ohio Court is appropriate under 28 U.S.C. § 1404(a).[23] Plaintiffs, having elected to file in this district in the first instance, naturally oppose transfer.[24]

Plaintiffs argue that transfer "could deny Plaintiffs a remedy" and "result in an outcome contrary to Georgia public policy."[25] Specifically, they contend that an Ohio court applying Ohio law would enforce the Employment Covenants, even though the covenants are unenforceable under Georgia law.[26] Plaintiffs do not

---

[21] *Id.* at 13–15.

[22] ECF 35.

[23] *Id.*

[24] *See generally* ECF 20.

[25] *Id.* at 2.

[26] *Id.* at 2, 15–17; ECF 33, at 8–9. *See also, e.g.*, ECF 20, at 8 ("[A]n Ohio court applying Ohio law would predictably lead to a different result than in Georgia,

6

plead that the Employment Agreements or the APA, or those contracts' choice-of-law or forum-selection clauses, cannot be enforced. Rather, their theory seems to be that enforcement would deny them the ability to prevail on their claim that the Employment Covenants violate Georgia public policy.[27]

Plaintiffs' arguments in this regard are not consistent with their Complaint, which seeks only a declaratory judgment that the Employment Covenants are not enforceable under Georgia law.[28] Their briefing makes broader assertions: that the APA and their Employment Agreements are *themselves* unenforceable because the Employment Covenants violate Georgia law,[29] or that the forum-selection clauses should not be enforced because they require the application of Ohio, rather than Georgia, law.[30] Although this distinction is fine, it is an important one because it affects the analysis the Court must apply to Defendants' transfer motion.

---

    and a result that: (1) is violative of strong Georgia public policy regarding non–competition and non-solicitation covenants, and (2) would deprive Plaintiff of a remedy.").

27  *See, e.g.*, ECF 20 at 9–15.

28  ECF 1-1, ¶ 59.

29  ECF 15-1, at 14–23.

30  ECF 20, at 7.

### IV. Discussion

#### A. This Court has subject-matter jurisdiction.

Defendants removed the case to this Court based on diversity jurisdiction.[31] Diversity jurisdiction requires complete diversity of citizenship of the parties and an amount in controversy exceeding $75,000. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); 28 U.S.C. § 1332(a). Plaintiffs are all citizens of either Georgia or Florida.[32] Gill is a citizen of California.[33] CBIZ attests that it is incorporated in Maryland and headquartered in Ohio.[34] The parties are therefore diverse. And the jurisdictional threshold is easily met given Cryan's and Bowman's claims for general and specific damages on their libel cause of action[35]

---

[31] ECF 1.

[32] ECF 38.

[33] ECF 39.

[34] ECF 1-2, ¶¶ 3–4. Plaintiffs dispute that CBIZ is headquartered in Ohio and instead contend that its principal place of business is Missouri. ECF 33, at 11. However, for purposes of determining diversity of citizenship, what matters is that CBIZ is not a citizen of Georgia or of any state of which a Plaintiff is a citizen. *Tapscott*, 77 F.3d at 1355 ("Diversity jurisdiction requires complete diversity—every plaintiff must be diverse from every defendant.").

[35] ECF 1-1, ¶ 47.

8

and for punitive damages,[36] and their purported annual earnings from CBIZ.[37] Accordingly, the Court has jurisdiction.

### B. Transfer under § 1404(a) is appropriate.

Section 1404(a) codifies the doctrine of *forum non conveniens* for cases in which the transfer would be to another federal court. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). It states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

In the usual case, "the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine*, 571 U.S. at 62–63 (quoting 28 U.S.C. § 1404(a)). But when there is a valid forum-selection clause, that clause is to be given "controlling weight in all but the most exceptional cases." *Id.* at 63. The plaintiff's choice of forum "merits no weight" and he bears the burden of showing that the case should not be transferred. *Id.*[38] Nor are the

---

[36] *Id.* ¶ 49.

[37] ECF 6 (SEALED), ¶¶ 14–15.

[38] Plaintiffs contend that, having won the race to the courthouse, they are entitled to remain in this Court. ECF 20, at 17–19. Since their choice of forum is entitled

9

parties' private interests relevant. *Id.* at 64. That's because the contract with the forum-selection clause *already* reflects the parties' agreement as to the proper forum. *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)) (The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."); *Usme v. CMI Leisure Mgmt., Inc.*, --- F.4th ---, Case No. 22-11324, 2024 WL 3217570, at *4 (11th Cir. June 28, 2024). In determining whether transfer is warranted, the court may only consider the public interest, which can "rarely defeat a transfer motion." *Id.* at 64.

### 1. The forum-selection clauses are enforceable.

Plaintiffs have not carried their burden to show that the Court should not enforce the forum-selection clauses. *See Atl. Marine*, 571 U.S. at 62 n.5 (stating that its analysis under § 1404(a) "presuppose[d] a contractually valid forum-selection clause"). Contrary to Plaintiffs' argument that Georgia law controls whether the clauses are enforceable, in diversity cases such as this one, that question is

---

to no weight, the fact that this action was filed before the Ohio Case is irrelevant. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam) ("In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action."). Likewise, Plaintiffs' insistence that they have no connection to Ohio, ECF 1-1, ¶ 56, is immaterial.

determined by *federal* law. *P&S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (2003) (per curiam) (citing *Stewart*, 487 U.S. at 28–29). Forum-selection clauses are "presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam) (citations omitted). Plaintiffs have not made such a showing.

For the forum-selection clauses not to be enforced, Plaintiffs needed to show that (1) the clauses were induced by fraud; (2) Plaintiffs would be deprived of their day in court; (3) Ohio law would deprive Plaintiffs of a remedy; or (4) enforcement of the clauses would contravene public policy. *Id.*; *Davis v. Oasis Legal Fin. Operating Co., LLC*, 936 F.3d 1174, 1178 (11th Cir. 2019). Plaintiffs' arguments touch on each of these factors but do not satisfy any of them.

Despite their apparent suggestion that the Employment Agreements and APA are unenforceable because of their likely effects under the facts here, Plaintiffs do not argue that those contracts or the forum-selection clauses were themselves induced by fraud or violate Georgia's public policy. As to the forum-selection clauses, Plaintiffs assert that enforcing them might lead an Ohio court to apply Ohio law and conclude that the Employment Covenants are enforceable

(contrary to Georgia public policy).[39] But that is different from contending that the forum-selection clauses standing alone cannot be enforced because they violate Georgia public policy. *Compare Davis*, 936 F.3d at 1181 (upholding district court order declining to dismiss an action for having been brought in an allegedly improper forum because the forum-selection clause violated Georgia public policy; "Georgia statutes establish a clear public policy against out-of-state lenders using forum selection clauses to avoid litigation in Georgia courts.").

Plaintiffs also do not argue that they cannot have their "day in court" in Ohio. Indeed, Plaintiffs have *already* had the opportunity to present their arguments to the Ohio Court during its two-day evidentiary hearing.[40] Plaintiffs instead argue that they cannot obtain their preferred remedy if they must litigate in Ohio because "the overbroad covenants would likely be enforced against them."[41] This misapprehends what it means to be deprived of a remedy.

In *Lipcon v. Underwriters at Lloyd's, London*, the Eleventh Circuit considered whether forum-selection and choice-of-law clauses pointing to England were enforceable. 148 F.3d 1285 (11th Cir. 1998). In rejecting the appellants' arguments that the remedies provided under English law were inadequate, the court stated:

---

[39] ECF 20, at 2, 7–8.

[40] *See generally* ECF 27-1; Ohio Case, Docs. 28–29.

[41] ECF 20, at 16. *See generally id.* at 16–17; ECF 33, at 19–21.

12

> We will not invalidate choice clauses, however, simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States. Instead, we will declare unenforceable choice clauses only when the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair.

*Id.* at 1297 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); additional citations omitted). Although *Lipcon* dealt with a contract that required the application of foreign law in an international forum, 148 F.3d at 1289, the Court sees no reason why the same principle would not apply here. That's especially true since the *Lipcon* court evaluated the validity of the choice clauses using the same factors applicable here. *Id.* at 1295–96.

While Plaintiffs assert that their possible remedies under Ohio law might be less favorable than under Georgia law (because the Employment Covenants might be enforceable), they have pointed to nothing suggesting that the application of Ohio law would be "fundamentally unfair." And, while they assert that they would be unable to pursue their Georgia Uniform Deceptive Trade Practices Act claim in the Ohio Court, they have not explained why that would be the case.[42] In addition, Plaintiffs' declaratory judgment cause of action to invalidate the Employment Covenants is based on Georgia law. Whichever court hears Plaintiffs'

---

42    ECF 20, at 16–17.

13

claims will need to determine whether that is a viable cause of action. It is unclear how any court—no matter where it sits—could evaluate that claim without some consideration of Georgia's law. That Plaintiffs contractually agreed to terms they now find unfavorable does not demonstrate any fundamental unfairness.

Having concluded that the forum-selection clauses are valid, the Court turns to whether transfer is warranted.

### 2. The public interest does not militate against transfer.

Because the forum-selection clauses are enforceable, *Atlantic Marine* instructs that the Court should give them nearly controlling weight against the relevant public-interest factors. Such factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)); *Usme*, 2024 WL 3217570, at *3. All but the first and last of these are, to some extent, implicated by Plaintiffs' arguments.[43] Plaintiffs assert

---

[43] No party has made an argument about court congestion. And, given the parallel proceeding pending in the Ohio Court, Ohio's citizens already potentially face jury duty in connection with the parties' dispute.

14

that Georgia law strongly disfavors overbroad restrictive employment covenants and renders their Employment Covenants unenforceable.[44] Because the Ohio Court will apply Ohio law, the covenants will be enforced, which (Plaintiffs contend) would violate Georgia's public policy.[45]

Whether the covenants violate Georgia policy is the substantive question posed by Plaintiffs' declaratory judgment cause of action in the first place—a question that has by no means been resolved. Plaintiffs' assertion that an Ohio court would refuse to consider Georgia public policy is strongly undercut by the fact that the Ohio Court has *already* considered whether the Employment Covenants violate the "fundamental policy of Georgia."[46] Specifically, the court analyzed Ohio's choice of law principals, which provide for an exception to the application of Ohio law when it "would be contrary to a fundamental policy of a state which has a materially greater interest than [Ohio] in the determination of the particular issue . . . ."[47]

Although the Ohio Court concluded, at this preliminary stage, that Georgia's public policy did not prohibit enforcement of the Employment

---

[44] ECF 20, at 8–15.

[45] *Id.* at 15–16.

[46] ECF 27-1, at 13.

[47] *Id.*

Covenants, the application of Ohio law nevertheless required an analysis of Georgia's.[48] Plaintiffs presented their Georgia public policy arguments and the Ohio Court considered them. Plaintiffs have not explained how their failure to *prevail* on those arguments outweighs the nearly dispositive weight this Court must afford the parties' contractually agreed-on forum-selection clauses. *Usme*, 2024 WL 3217570, at *4 (citing *Atl. Marine*, 571 U.S. at 62–64) ("[T]he existence of a valid and enforceable forum-selection clause is essentially dispositive in the *forum non conveniens* analysis.").

Further, avoiding potentially conflicting outcomes and judicial efficiency strongly favor transfer. The Ohio Court has already heard evidence and argument from the parties and entered and extended a temporary restraining order against Plaintiffs. The preliminary injunctive relief Plaintiffs seek here would directly conflict with those rulings. These public-interest factors, coupled with the overwhelming weight the Court must afford the parties' agreed-on forum, make clear that this action should be transferred.

## V. Conclusion

Plaintiffs have failed to demonstrate that this is the exceptional case in which a valid forum-selection clause should not be enforced and transfer denied. Defendants' motion to transfer this case pursuant to 28 U.S.C. § 1404(a) [ECF 16]

---

[48] *See generally id.* at 13–15.

is **GRANTED**. The Clerk is **DIRECTED** to transfer this action to the United States District Court for the Northern District of Ohio, Eastern Division, and to close this case.

The motion for preliminary injunction filed by Plaintiffs Cryan, Bowman, and Haynes [ECF 15] remains pending.

**SO ORDERED** this 6th day of August, 2024.

                                            Steven D. Grimberg
                                      United States District Judge